# ATTACHMENT A



Eric L. Lewis
202 659 7203
eric.lewis@lewisbaach.com

July 22, 2015

Stephanie Brooker, Esq.
Director, Enforcement Division
Financial Crimes Enforcement Network
1801 L Street NW
Washington, D.C. 20006

**RE: BPA - Ramon and Higini Cierco**

Dear Ms. Brooker:

Thank you again for taking the time for you and your team to meet with us on July 15, 2015. As we discussed at our meeting, and recognizing that this matter is the subject of ongoing administrative proceedings, we are putting in writing our request to FinCEN to accept certain information, described below, that we submit is material to the proposed rulemaking involving Banca Privada d'Andorra ("BPA"). We also ask that FinCEN communicate to the Andorran government that it does not object to the Ciercos' participation in the resolution of the remaining BPA assets. Finally, we also request certain information which we hope FinCEN will be in a position to provide.

As discussed, the Ciercos were not involved in the day-to-day operation of BPA. The Ciercos relied on banking professionals to manage the bank, and authorized the engagement of KPMG and Deloitte to report on significant compliance issues, including anti-money laundering ("AML") compliance. The AML audit reports that KPMG and Deloitte delivered consistently confirmed that BPA maintained proper AML controls. In addition, the Ciercos understood that BPA management proactively made required reports of suspicious activity to regulators and responded appropriately to requests for information. As we emphasized, the Ciercos had a record of taking appropriate action, including termination of employees, and would have cooperated fully with regulatory authorities had that request been made prior to the announcement of the Section 311 Notice. On their behalf, we reiterate their offer to meet and cooperate with FinCEN and other foreign authorities to help ensure that all legitimate law enforcement objectives are fulfilled and in the hope that the assets of the valuable BPA franchise are not wasted.

**The March 24, 2014 Letter to INAF**

The bona fides of our representations are confirmed, significantly, by a March 24, 2014 letter that BPA addressed to Maria Cosan, head of the Andorran INAF. In the letter, BPA self-identified and reported each of the specific alleged instances of money laundering alleged in the March 10, 2015 Section 311 Notice. Indeed, BPA's disclosure came five months prior to the initial contact between the U.S. Embassy and Andorran government in August 2014, and a year before FinCEN's issuance of the Section 311 Notice. Notably, after it submitted the March 24, 2014 letter, BPA received no follow-up questions or feedback from the Andorran regulators.

We request that FinCEN agree to accept a copy of the March 24, 2014 Letter. We submit that BPA's self-identification and self-reporting of these matters is inconsistent with the conclusion that BPA was an institution with inadequate AML controls. Indeed, given that BPA's own report may well have initiated the very matters that formed the Section 311 Notice predicate, we submit that BPA could not be labeled an organization of primary money laundering concern based upon these cases. To the extent that the Andorran regulators failed to provide FinCEN the March 24, 2014 Letter, this supports our contention that Andorran regulators acted with recklessness or willful blindness, and may have spurred FinCEN into precipitous and irreversible actions based on erroneous premises.

**FinCEN's Non-objection to the Ciercos' Participation in the Resolution of BPA.**

We also request that FinCEN communicate to the Andorran government that FinCEN does not object to the Ciercos' participation in plans to resolve the BPA assets.

Since the FinCEN's issuance of the Section 311 Notice, the Ciercos have made repeated formal requests to the Andorran government for information regarding the Andorran government's seizure of BPA and to commence a dialogue with respect to proposed actions. Nevertheless, the Andorran government has neither documented nor otherwise told the Ciercos why they were ousted from the BPA Board of Directors and have excluded them from all processes related to BPA's resolution.

At our meeting, we represented to FinCEN that the Ciercos were told informally by Andorran government representatives that the Andorran government will neither communicate directly with the Ciercos nor consider their input with respect to the resolution of the BPA assets because the Andorran government fears FinCEN's potential disapproval or reprisal. You suggested that we document the source of such communication. On June 25, 2015, Mr. Cesar Goyache, the CEO of AREB (the Andorran organization set up to handle BPA post-Section 311 Notice) was asked by the Andorran parliament to report to its Economy & Finance Commission. In a question and answer session, Mr. Goyache was asked why AREB had not communicated with the Ciercos, and if the Ciercos could remain shareholders in the new, resulting financial entity once BPA is restructured. In response, Mr. Goyache stated in substance that, while it was true that original shareholders are usually part of the "restructuring" process, the Ciercos would not be in this case. Mr. Goyache asserted that the Section 311 Notice evidenced FinCEN's distrust of the Ciercos because they are ultimately responsible for the bank's management. Consequently, according to Mr. Goyache, it would not make sense for the Ciercos to be part of the process, and it would be impossible for them to be shareholder of the new, resulting entity. As Mr. Goyache stated, "Let's look at it with the perspective of trust, let's put ourselves in FinCEN's shoes." (See http://www.consellgeneral.ad/ca/videos/compareixences-publiques/2015-06-25-comissio-de-finances-i-comissio-especial-de-vigilancia-i-prevencio-de-risc-per-a-l2019estabilitat-financera-conjuntament, minutes 59 through 68)

We submit that, to the extent the Andorran government fears FinCEN disapproval or reprisal, the Andorran government is mistaken. It defies common sense to conclude that FinCEN would express a position to another regulator one way or the other regarding who should control a re-organized banking institution. Indeed, for the reasons explained below, there is no legitimate reason why the Ciercos should not participate in the bank's resolution, and every reason why they should do so. Nevertheless, to the extent that the Andorran government misunderstood or misrepresented FinCEN's

position with respect to the Ciercos, we submit that it is fair and proper that FinCEN should correct it by communicating directly to the Andorran government that it has no objection to the Ciercos' participation in the resolution of the BPA assets. Moreover, as referenced at our meeting, it would be in the interest of all stakeholders, including regulators, that the BPA situation be resolved in a professional and responsible manner to preserve commercial value consistent with the relevant law enforcement interests.

Indeed, we submit that the event chronology strongly supports the conclusion that one of FinCEN's primary concerns was the Andorran government's failure to respond and cooperate with FinCEN. The Ciercos, on the other hand, want to cooperate (as evidenced by their request to provide FinCEN the March 24, 2014 Letter). Nevertheless, the Ciercos are excluded from BPA's reorganization not because of anything that they have done or not done, but apparently because the Andorran government fears FinCEN's reaction. This is a wholly unsatisfactory state of affairs that should properly be resolved. We understand that it is not FinCEN's role to interfere in internal Andorran politics; we ask merely that FinCEN state that position with certainty, and confirm that it has no objection to the Ciercos' playing a rule in their resolution.

The Ciercos have the knowledge, financial sophistication and motivation to put together a viable commercial plan to preserve BPA's value in a responsible manner. They can and should be part of the solution. The Ciercos wish to work jointly with the relevant authorities to make sure that the value in the bank is preserved and maximized without risk to the Andorran financial system or to relevant law enforcement interests. In addition, the Ciercos are entitled to realize some of the value in the bank through fair payment or passive shareholder participation in a new or restructured institution. They are entitled to have their reputations cleared and their interests respected.

**Proposals**

As discussed in our July 15, 2015 meeting and outlined in our presentation provided to you, on behalf of the Cierco's we put forth the following three proposals and ask for FinCEN's public support for, or private communication to the Andorran government that it has no objection to, one of these proposals, and the Ciercos' proposed role in its realization.

*Proposal #1: Support the Ciercos' participation in the resumption of operations of BPA under previous ownership with strict conditions and supervision*

We request that FinCEN support (or take no objection to), the return the bank to the control of the Ciercos under strict conditions and supervision. The Ciercos will ensure that:

   a. An Independent Monitor for all international wire transactions is hired for a proscribed period of time. This is done routinely in U.S. and international institutions with far larger problems (e.g. Wachovia, HSBC, BNPP).

   b. Prohibition on cash deposits above *de minimis* threshold.

3

c. Monthly AML risk reports to FinCEN and regulators.

d. Install new senior management subject to pre-approval by monitor.

e. Annual KYC Review of all clients maintaining balances over $100,000.

f. Bank will employ international best practices for AML as dictated by US standards and subject to active monitoring.

We submit that the above proposal would provide far more assurance of effective oversight and AML prevention than is currently the case with respect to any other Andorran financial institution, while allowing a solvent, dynamic institution to continue to serve its core depositor base, with its loyal existing staff and new, professional management.

*Proposal #2 – Support for Commercial Sale of BPA to Another Financial Institution*
Alternatively, we request that FinCEN support (or take no objection to) the Ciercos involvement in the sale of BPA to another bank.

a. The Ciercos will participate in a transparent process that ensures that the assets of the bank are sold to another financial institution in an orderly commercial manner and reasonable timeframe with independent professional advisors charged with maximizing value.
b. The Ciercos would be permitted to play a constructive part in the sale negotiations to maximize value.
c. The Ciercos would be compensated for their interest in the bank when it is sold.

This option would enable the Ciercos to bring their knowledge of the relevant market to facilitate an orderly, commercial sale at market value and to prevent either waste of assets in the sales process by the Andorran authorities or a windfall to a prospective purchaser if the process is not transparent, orderly and commercial.

*Proposal #3 – Support Restructuring of BPA into a New Venture*

Alternatively, we request that FinCEN support (or take no objection to) the Cierocs constructive participation in the restructuring of BPA into a new venture. That venture could take the form of a cooperative or social bank where depositors and employees take ownership interests, a model which has worked extremely well in similar markets. The Ciercos would take no active management role in the new venture and would be shareholders in the new venture.

**Follow up Questions**

There are numerous questions that have arisen based upon the actions of the Andorran government and the comments by representative from the US Embassy in Madrid regarding this matter. Below we respectfully submit some of our outstanding questions.

1. Did the Andorran Government make FinCEN aware of BPA's March 24, 2014 letter and active cooperation in the matters cited in the Section 311 Notice?

2. Was FinCEN aware of the ongoing legal proceedings with respect to these matters?

3. Were there other cases or matters that were not disclosed that would warrant a Section 311 Notice or does FinCEN rely principally on these previously disclosed cases as discussed in the March 24, 2014 letter?

4. Why was BPA the subject of "the Hammer" when the Andorran government itself appears to have acted with willful neglect and denial of systemic issues?  By "the Hammer" we refer to the statement made by Mr. Smith, Economic Counselor of the U.S. Embassy in Madrid, when he stated at an AUSBANC conference on April 21, 2015, "With respect to Andorra, last year we signaled our discomfort with an official report identifying problems in the system there.  I will not say that they did not realize it but they did not react with the appropriate vigor and we had to use the hammer." (See http://youtu.be/j2aPNwxlp–w, minute 57)

5. It is our understanding that BPA does business under rules and in a manner that is similar to other Andorran banks.  Were there factors which distinguished BPA from other Andorran banks that led to the Section 311 Notice against BPA?  Was those factors reflected in the notice?  Were other measures considered?

6. Was the US Government concerned with the Andorran financial system as a whole? Or were there separate discussions with Andorran officials specific to BPA before "the Hammer" was used?

7. At what point and why did FinCEN's attention turn from the Andorran financial system to BPA?

8. The Andorran government's response did not seriously address the issues in the August 2014 communication and rejected the critical suggestions made by FinCEN regarding cash transaction reporting.  Did the U.S. government try to impress upon Andorra the need to reform its system?

9. Were there other communications between August 2014 and March 2015 regarding BPA with the Andorran government? Did FinCEN specifically discuss the possibility of a Section 311 Notice with the Andorran authorities?  Was there a discussion about a Section 311 against more than one Andorran Bank? Against all banks in Andorra?

Lewis | Baach pllc

10. What is the content of the January 6, 2015 communication to the Andorran government?

11. The Ciercos believe that there is strong prima facie evidence that BPA paid the price for the Andorran government's failure to respond with due expedition and diligence to U.S. requests. Are they right or wrong?

Our clients wish to be fully cooperative with FinCEN in this investigation and are prepared to offer any additional information in their possession. We look forward to hearing from you and would be pleased to meet with you again at your convenience.

Sincerely,

Eric L. Lewis