**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RAMON CIERCO, HIGINI CIERCO, SUCCESSORS D'HIGINI CIERCO GARCIA, S.A., and CIERCO MARTINEZ 2 2003, S.L. in each Plaintiff's Personal Capacity and Derivatively on Behalf of Themselves and All Others Similarly Situated, | Civil No. 15-cv-1641(JEB) |
| Plaintiffs, | Oral Argument Requested |
| v. | |
| JACOB LEW, in his Official Capacity as Secretary of the Treasury, *et al.*, | |
| Defendants. | |

**STATEMENT OF UNDISPUTED MATERIAL FACTS**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT AND REQUEST FOR EXPEDITED CONSIDERATION**

Pursuant to LCvR 7(h), plaintiffs Ramon Cierco, Higini Cierco, Successors D'Higini Cierco Garcia, S.A., and Cierco Martinez 2 2003, S.L., by and through undersigned counsel, hereby submit the following statement of undisputed material facts in support of their motion for partial summary judgment under Fed. R. Civ. P. 56.

**Parties and Relevant Non-Parties**

1. Banca Privada d'Andorra S.A. ("BPA" or "the Bank") is an international, commercial bank organized under the law of Andorra, with its principal place of business in Andorra. Declaration of Ramon Cierco attached hereto as Ex. 1 ¶ 3-5; Ex. 2 at 13464.

2.      Ramon Cierco and Higini Cierco (the "Ciercos") are citizens and residents of Andorra and together with another family member own all of the shares of Successors D'Higini Cierco Garcia, S.A., a corporation organized under Andorran law.  Ex. 1 ¶¶ 1-3.

3.      Higini Cierco and his immediate family own all of the shares of Cierco Martinez 2 2003, S.L., a corporation organized under Andorran law.  Ex. 1 ¶ 4.

4.      The two corporations, Successors D'Higini Cierco Garcia, S.A., and Cierco Martinez 2 2003, S.L., together with Ramon Cierco individually and another Cierco family member, collectively own 75% of BPA.  Ex. 1 ¶ 5.

5.      Prior to BPA's seizure by the Andorran government, Ramon and Higini Cierco served as non-executive directors of BPA and, on a rotating basis, as the Chairman of the Board of Directors of BPA.  Ex. 1 ¶ 6.

6.      The U.S. Department of the Treasury is the executive agency led by Secretary of the Treasury Jacob Lew.

7.      The Secretary of the Treasury implements and administers Section 311 of the USA PATRIOT Act (codified at 31 U.S.C. §5318A).  Secretary Lew has delegated this authority to the Director of the Financial Crimes Enforcement Network ("FinCEN"), a bureau within the Department of the Treasury.  Jennifer Shasky Calvery is the Director of FinCEN and is sued in her official capacity.  Ex. 2 at 13464; Ex. 15 ¶¶ 1, 6.

**U.S. and Andorran Discussions Leading Up to the Seizure of BPA**

8.      On or about August 26, 2014, the U.S. Embassy in Spain sent a "Verbal Note" to the Andorran government.  Ex. 3.

9. On September 22, 2014, the Andorran authorities responded to the Verbal Note. Ex. 4.[1]

**FinCEN's Issuance of the Notice of Finding and Notice of Proposed Rulemaking**

10. On March 10, 2015, FinCEN issued a Notice of Finding ("NOF") described in the Federal Register as "Notice of Finding that Banca Privada d'Andorra is a Financial Institution of Primary Money Laundering Concern," 80 Fed. Reg. 13464 (Mar. 13, 2015). Ex. 2.

11. At the same time, FinCEN issued a Notice of Proposed Rulemaking ("NPRM") announcing its intention to impose a "Special Measure against Banca Privada d'Andorra as a Financial Institution of Primary Money Laundering Concern," 80 Fed. Reg. 13304 (Mar. 13, 2015). Ex. 5.

12. Prior to issuing the NOF, FinCEN gave no notice to BPA or to plaintiffs that it was investigating BPA and was considering issuing a finding against BPA under Section 311. BPA, its Board of Directors, and its majority shareholders had no opportunity to participate in or otherwise offer input into the investigative process leading to the NOF. Ex. 1 ¶ 7.

13. On May 6, 2015, counsel for plaintiffs submitted a written Comment to FinCEN objecting to the NOF and the NPRM and offering information in support of their objection. Ex. 6.[2]

14. On July 15, 2015, counsel for plaintiffs met with FinCEN personnel. At the July 15 meeting, counsel for plaintiffs offered to provide to FinCEN a copy of a letter dated March 24, 2014, from BPA to the Andorra financial regulator, Institut Nacional Andorra de Finances

---

[1] For the Court's convenience, English translations follow all Spanish-language exhibits.

[2] Plaintiffs do not attach all of the exhibits to the May 6 letter because plaintiffs are not seeking review on the merits. All exhibits that bear on plaintiffs' motion (*e.g.* the Government Accountability Office ("GAO") report referenced in paragraph 26, *supra.*) are referenced separately and attached.

Case 1:15-cv-01641-JEB   Document 15-2   Filed 11/12/15   Page 4 of 7

("INAF"), which described the specific instances of alleged money laundering cited in the NOF. FinCEN asked that counsel for plaintiffs put this offer in writing. Declaration of Eric L. Lewis attached hereto as Ex. 7.

15. On July 22, 2015, counsel for plaintiffs sent a letter to FinCEN further addressing the NOF and NPRM and offering to provide the March 24, 2014 letter. Ex. 8.

16. By letter of September 4, 2015, counsel for plaintiffs made a further submission to FinCEN concerning the NOF and NPRM. The letter requested that FinCEN disclose all non-classified information that it considered in issuing the NOF and NPRM, with an opportunity for plaintiffs to respond. The letter attached a copy of BPA's March 24, 2014 letter to INAF. Ex. 9.

17. To date, FinCEN's only response to the requests made by plaintiffs' counsel was in an email dated September 16, 2015. Ex. 10.

18. On August 7, 2015, counsel for plaintiffs wrote to the FinCEN Disclosure Office requesting documents related to BPA under the Freedom of Information Act (FOIA). Ex. 11.

19. On September 14, 2015, Gilbert L. Paist, Disclosure Officer, responded by stating that FinCEN's estimated response date is December 15, 2015. Ex. 12.

20. The only portions of the administrative record relating to the NOF and NPRM that FinCEN has disclosed to plaintiffs are the NOF and NPRM themselves. Ex. 7 ¶ 4.

**<u>BPA's Legitimate Business</u>**

21. Until March 10, 2015, BPA engaged in regular banking business in Andorra and, through subsidiaries, in Spain and Panama. In addition, BPA had representative offices in Luxembourg and Switzerland. Ex. 1 ¶ 8; 2 at 13464.

22. BPA offered a wide variety of financial products and services, including corporate and personal banking, loans, funds management, and custody services. Ex. 1 ¶ 9; Ex. 2 at 13466.

4

23. When BPA acquired Banco Madrid in 2011 and made it a BPA subsidiary, the Bank of Spain investigated and agreed not to oppose the purchase. Ex. 13.

24. Information concerning BPA's legitimate business was available from: (i) BPA's regulators in Andorra, Spain, and Panama; (ii) its banking and financial partners, including those in the United States; (iii) its AML auditors – Deloitte and KPMG; (iv) its directors, shareholders, senior management, and employees; and (v) its customers. Ex. 1 ¶ 10.

25. Prior to March 10, 2015, BPA maintained a public website on which it posted its financial statements from 2011, 2012, and 2013, information concerning its corporate structure, data concerning its business, and a description of its policy on corporate responsibility. Ex. 1 ¶ 11.

**Injurious Effects of the NOF and NPRM**

26. In September 2008, the Government Accountability Office ("GAO") issued a report entitled "USA PATRIOT Act, Better Interagency Coordination and Implementing Guidance for Section 311 Could Improve U.S. Anti-Money Laundering Efforts." The GAO was asked "to examine (1) the process used to implement Section 311 restrictions, (2) the process Treasury follows to finalize or withdraw a proposed rule, and (3) how Treasury assesses the impact of Section 311." Ex. 14 at 1.

27. In connection with litigation brought by FBME Bank Ltd. and FBME Ltd. styled *FBME Bank Ltd., et al. v. Lew, et al.,* Case No. 1:15-CV-1270 (CRC) (D.D.C.), on August 18, 2015, FinCEN Director Jennifer Shasky Calvery submitted a Declaration discussing, *inter alia,* FinCEN's implementation of Section 311. Ex. 15.

28. In response to the NOF and NPRM, BPA's correspondent banks in the United States immediately closed BPA's accounts. Ex. 1 ¶ 12; Ex. 16.

29. As a consequence of the cancellation of its correspondent banking accounts in the United States, BPA could no longer engage in dollar-based transactions, thus precluding it from acting as an international bank. Ex. 1 ¶ 12; Ex. 16.

30. In testimony before the United States Senate Committee on Foreign Relations, David S. Cohen, Under Secretary for Terrorism and Financial Intelligence, Department of Treasury, testified that "losing the ability to facilitate transactions in the dollar" is "a death penalty for any international bank." Ex. 17 at 2.

31. On March 11, 2015, BPA was seized by the Andorran government. The Andorran financial regulator, INAF, announced that the seizure was "not motivated by a . . . lack of liquidity nor solvency of BPA or its Group" but was caused by "the action of the FinCEN." Ex. 18.

32. On April 2, 2015, Andorra enacted its Restructuring of Financial Entities Act, Leg. No. 8/2015, enacted specifically to address FinCEN's actions against BPA. On April 27, 2015, BPA was placed in administration. Ex. 19.

33. The Agency for the Restructuring of Financial Entities ("AREB") – BPA's Administrator – is a corporation established under Leg. No. 8/2015, and managed by a five person board of directors. Exs. 19 and 20.

34. AREB's statutory responsibility is to supervise the "Resolution" in which assets of BPA will be transferred to a "good bank" and that bank will be sold to new owners in a public bidding process. Ex. 21. AREB has announced applications for bidders. Ex. 22. AREB has also announced that it intends to complete the "Resolution" expeditiously. Exs. 20, 21 and 22.

35. Also in response to the NOF and NPRM, BPA's regulator in Spain seized Banco Madrid, BPA's subsidiary in that country.  On March 16, 2015, Banco Madrid's new administrators filed for bankruptcy. Ex. 23.

36. On March 10, 2015, BPA's regulator in Panama seized BPA's subsidiary in that country. Ex. 24.  BPA Panama remains under the control of the Panamanian regulator. Ex. 25.

37. On September 9, 2015, the Ciercos met with representatives of AREB who indicated that AREB did not intend to challenge the NOF and NPRM.  Ex. 1 ¶ 13.

38. AREB has not submitted a comment in response to the NPRM or otherwise suggested that it intends to challenge the NOF and NPRM.  Docket Folder Summary, Imposition of Special Measure against Banca Privada d'Andorra as a Financial Institution of Primary Money Laundering Concern, http://www.regulations.gov/#!docketDetail;D=FINCEN-2015-0002 (last visited Nov. 10, 2015).

Respectfully submitted,

By: /s/ Eric L. Lewis
Eric L. Lewis (DC Bar #394643)
*eric.lewis@lewisbaach.com*
A. Katherine Toomey (DC Bar #426658)
*katherine.toomey@lewisbaach.com*
LEWIS BAACH PLLC
1899 Pennsylvania Avenue, NW, Suite 600
Washington, DC 20006
(202) 833-8900

Aaron T. Wolfson *(pro hac vice)*
*aaron.wolfson@lewisbaach.com*
LEWIS BAACH PLLC
405 Lexington Avenue, 62nd Floor
New York, NY 10174
(212) 826-7001

Dated:   November 12, 2015                    *Attorneys for Plaintiffs*