**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RAMON CIERCO, HIGINI CIERCO, SUCCESSORS D'HIGINI CIERCO GARCIA, S.A., and CIERCO MARTINEZ 2 2003, S.L. in each Plaintiff's Personal Capacity and Derivatively on Behalf of Themselves and All Others Similarly Situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>JACOB LEW, in his Official Capacity as Secretary of the Treasury, *et al.*,<br><br>            Defendants. | Civil No. 15-cv-1641(JEB) |

**PLAINTIFFS' REQUEST FOR A STATUS CONFERENCE AND**
**OPPOSITION TO MOTION TO STAY SUMMARY JUDGMENT BRIEFING**

Defendants' motion to stay is yet another example of how they conduct themselves under rules of their own devising. Plaintiffs' motion plainly sets forth the urgency in its title – Motion for Partial Summary Judgment and for Expedited Consideration. It describes defendants' strategy of imposing the death penalty on a target bank first and then running the clock out so there is nothing left to fight about. Nevertheless, defendants chose to stay silent and wait until the day their opposition to plaintiffs' pending motion was due, and then simply grant themselves a stay. Their purported reasons for asking this Court to approve this stay, moreover, are untenable. They complain about service of the summons and complaint, when, in fact, each individual and agency defendant indisputably received service within a few days of filing, and, in all events, any purported technical defect in service of the complaint does not enlarge the time

for defendants to respond to a properly filed motion for summary judgment. They ask for a stay of plaintiffs' motion on the basis of a motion to dismiss, but that motion has not been filed and defendants provide no information as to when it will be filed. Thus, the Court is faced with a request for an open-ended stay, in which the timing is, in defendants' view, entirely in the control of the defendants, thereby creating further delay and further prejudice to plaintiffs.

Plaintiffs respectfully submit that there is no basis for this Court to stay briefing of the plaintiffs' *pending* motion for summary judgment on the mere representation by defendants that they plan to file a dispositive motion at some point in the future. There is no reason why defendants could not have made their ripeness, standing and jurisdictional arguments (which they preview in their motion for a stay) as part of their opposition to plaintiffs' motion and filed it within the time provided by the Federal Rules. The fact that defendants chose to sit back until the eleventh hour and then file a motion to stay the pending motion for summary judgment and for expedited consideration, without at any time raising what they viewed as a deficiency in plaintiffs' service, strongly suggests that this is simply part of a strategy by defendants to delay this matter.

At bottom, defendants' motion to stay is nothing more than the next chapter in their undisguised attempt to destroy this Andorran bank before plaintiffs have any genuine opportunity to challenge their actions. Sentence first, verdict afterward, if ever. Defendants indisputably have had plaintiffs' complaint for nearly two months and they have had sufficient time to consider plaintiffs' claims and their possible defenses. To the extent there was any technical deficiency in service, it has now been cured, and there has been no prejudice to defendants. Accordingly, the Court should order defendants forthwith to file their opposition, if any, to the pending motion for summary judgment. Resolving this motion – and not some

2

promised but as yet unfiled motion to dismiss – should be the Court's first order of business. Plaintiffs also respectfully request a prompt status conference so that the Court can manage this case with the expedition that is required to provide a window for meaningful relief rather than allow defendants to slow walk this case until its ripeness arguments morph into mootness arguments.

## BACKGROUND FACTS

Defendants' anodyne recitation of the facts they assert are pertinent to their motion to stay obscures what this case is all about. This is not a routine action for judicial review of final agency rule-making. As set forth in plaintiffs' pending summary judgment motion, this case is about agency abuse of power and about a rule-making procedure designed to preclude effective review. It concerns agency inaction following issuance of an immediately devastating finding under the unique procedural provisions of the USA Patriot Act, calculated to avoid any genuine opportunity to oppose the agency action or to obtain meaningful and timely judicial review.

Here, FinCEN, the Treasury Department's agency charged with administering Section 311 of the USA PATRIOT Act's anti-money laundering provisions, issued an *ex parte* finding that Banca Privada D'Andorra S.A. ("BPA") is a bank of "primary money laundering concern" and proposed to bar it from access to U.S. dollar banking transactions, thus ending its ability to function as an international bank. FinCEN issued this finding in admitted disregard of the statutory criteria it is charged to consider. It did so expecting and intending that, without waiting for the eventual issuance of a final rule, U.S. banks would immediately shut their doors to BPA and BPA's regulators abroad would seize the bank.[1] It then commenced an attenuated rule-

---

[1] As set forth in plaintiffs' motion for summary judgment, FinCEN was so certain that a Notice of Finding and proposed rule under Section 311 would suffice to shut down a target bank that the agency routinely ignores its obligation to issue a final rule. It simply waits until the target bank

3

making process but without revealing even the non-secret information on which its initial notice of finding was based, in further violation of its statutory obligations, expecting and intending that long before this process would be completed BPA would be defunct.[2]

Plaintiffs will not burden the record with a fuller statement of the facts but would respectfully refer the Court to their pending summary judgment motion.  That motion will place defendants' stay motion in appropriate context, showing that defendants' request for stay is but another step in their effort to avoid being called to task for their misconduct.

## ARGUMENT

I.   **Any Purported Technical Defect in Service of the Summons and Complaint Does Not Justify Defendants' Self-Granted Stay.**

   A.   **Defendants Had Timely Actual Notice of Plaintiffs' Complaint and Summary Judgment Motion.**

Defendants do not argue that they did not receive timely actual notice of plaintiffs' complaint or summary judgment motion.  Actual notice is, of course, the touchstone and sole purpose of effective service of process.  As this Court has observed, "the rules governing service of process are utilized for the purpose of providing a likelihood of bringing actual notice to the intended recipient . . . and actual notice satisfies the due process notice requirement and provides the court with personal jurisdiction." *Ali v. Mid-Atl. Settlement Servs., Inc.*, 233 F.R.D. 32, 36 (D.D.C. 2006), *amended on other grounds*, 235 F.R.D. 1 (D.D.C. 2006), *vacated on other grounds sub nom., Ali v. Tolbert*, 636 F.3d 622 (D.C. Cir. 2011) (internal citation and quotations

---

has been shut down or liquidated as a result of the proposed rule, and then withdraws its proposed rule as moot. [ECF No. 15, Memo. in Supp. of Mot. for Partial Summary Judgment at 25-27].

[2] Even now, FinCEN suggests that it has no obligation to provide plaintiffs with the information on which its Notice of Finding and Proposed Rule were based.  In a coy footnote, FinCEN suggests that it is *considering* providing this information to plaintiffs, but has not yet decided whether to do so.  Defs.' Mot. at 11 n. 5.

omitted). Rather, defendants raise a technical defense, seizing on the fact that plaintiffs mailed their summons and complaint to the U.S. Attorney himself instead of to the civil process clerk in the U.S. Attorney's office. Defendants do not challenge service on themselves individually; there is no dispute that each of the individual and agency defendants, along with the Attorney General, were properly served by certified mail on October 13. Indeed, the complaint was e-mailed to the relevant official at FinCEN as a courtesy on the day of its filing. Nor do defendants contend that the U.S. Attorney did not receive actual notice by the certified mail addressed to him. Their sole complaint thus has nothing to do with actual notice, and, in any event, it has now been cured by hand delivery to the U.S. Attorney. [ECF No. 20].[3] There is thus now no further issue concerning service of process or personal jurisdiction over these defendants.

Further demonstrating that all defendants had actual notice of the complaint, defendants cite to it repeatedly in their motion for a stay. Defendants' stay motion thus reflects that they have had ample opportunity to review the complaint to determine their initial strategy – a motion to dismiss – and to identify and brief the bases for such motion. Defs.' Mot. at 8-12. Under these circumstances, plaintiffs respectfully submit that defendants' assertion of a deficiency in service is disingenuous and is intended solely as a stratagem for delay. Defendants' interest in delay is clearly evident from their conduct so far in this case. They were indisputably on notice of the filing of the complaint and each received personal service of the summons and complaint. Approximately one month later, each of the defendants was served with the motion for partial

---

[3] Out of an abundance of caution, on December 2, 2015, the summons and complaint were sent to the U.S. Attorney by certified mail addressed to the civil process clerk. As of the time of this filing, the mail is still in transit.

summary judgment.[4] At no time did defendants suggest that service had not been accomplished as required. On November 23, 2015, plaintiffs' counsel wrote to defendant FinCEN requesting that the agency file a certified list of the administrative record related to the motion for summary judgment in conformance with LCvR 7(n). This provided defendants with yet another opportunity to raise their concern about service. But they did not, and indeed chose not to respond to that letter until after they had filed their motion to stay. On November 30, 2015, the last day for defendants to file a response to the summary judgment motion, defendants' counsel emailed plaintiffs seeking their consent for a motion to stay. Even at that point, defendants' counsel did not raise the asserted defect in service with plaintiffs' counsel.

As this Court has noted, "[t]he rules governing service of process are not designed to create an obstacle course for plaintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to the court's jurisdiction," but are instead "for the purpose of providing a likelihood of bringing actual notice to the intended recipient." *Ali*, 233 F.R.D. at 35-36 (quotation omitted). But rather than being forthcoming, defendants have carefully guarded their service argument for nearly two months, waiting until the last possible moment to raise it. This is precisely the type of cat-and-mouse game that the Court should not reward. Defendants can point to no prejudice, and any defect in service has now been rectified. Accordingly, they should be directed to respond to the summary judgment motion and to the complaint, forthwith.

---

[4] Plaintiffs did not rely on the ECF system for service because no counsel had yet entered an appearance in the case for defendants. Accordingly, plaintiffs served the motion on defendants individually, by express mail. [ECF No. 16].

>    B.   **The Time Allowed for Defendants to File their Opposition to Summary Judgment, in All Events, Is Not Affected by Any Defect in Service of the Summons and Complaint.**

Defendants contend that their time to respond to the pending motion for summary judgment has not even begun to run because service of the summons and complaint was defective. Yet a curable defect in service of process, if there was a defect, does not excuse defendants from timely responding to plaintiffs' summary judgment motion. Defendants misleadingly cite Fed. R. Civ. P. 12(a)(2) for the proposition that the "time to answer or otherwise respond to the complaint" runs from "the date of 'service on the United States attorney.'" Defs.' Mot. at 8. In fact, Rule 12(a)(2) deals solely with the time to "serve an *answer* to a complaint, counterclaim, or crossclaim." It says nothing about the time for filing an opposition to a motion. An opposing party's time to file an opposition to a motion for summary judgment is not tied to service of the summons and complaint but is dealt with under LCvR 7(b). That rule provides:

> **(b) OPPOSING POINTS AND AUTHORITIES.** Within 14 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded.

The date of service referenced in LCvR 7(b) is service of the motion and not the summons and complaint. Here, on November 13, plaintiffs personally served each of the defendants with plaintiffs' summary judgment motion. [ECF No. 16]. Defendants' opposition, if any, was due on November 30, 2015.[5]

---

[5] The procedural posture of plaintiffs' summary judgment is thus similar to the situation that commonly arises when a plaintiff files a motion for a temporary restraining order or preliminary injunction at the very outset of the case. Courts routinely consider such motions when the defendant has actual notice of the summons and complaint, regardless of the status of technical service. *See, e.g., Barton v. Venneri*, Civ. A. No. 05-0669(JDB), 2005 WL 1119797, at *1 n.1

7

In short, a defect in the manner of service of the summons and complaint did not stay defendants' time to respond to the pending summary judgment motion. And defendants have given no reason of substance why the Court should exercise its discretion under LCvR 7(b) to extend their time beyond the 14 days that defendants indisputably have had to consider, draft, and file their opposition. Nothing in defendants' submission, either technically or substantively, supports their contention that their time to respond to plaintiffs' summary judgment motion has not begun to run. In fact, their time has run out.

## II. There Is No Basis for Postponing Consideration of Summary Judgment to Give Priority to Defendants' Not Yet Filed Motion to Dismiss on Jurisdictional Grounds.

Defendants next contend that the Court should extend the stay they have already granted themselves until it decides a motion to dismiss; a motion defendants have yet to file, and as to which they provide no date by which they intend to file. This promised future motion, defendants insist, should be briefed and decided first, before the Court takes up the pending summary judgment motion, indeed, before defendants are even called upon to file any opposition to that earlier motion. There is no question that this Court has discretion to control the sequence and timing of motions on its calendar, but defendants have offered no reason why that discretion should be exercised in their favor. To the contrary, given the nature of this case, the need for expedition as set forth in plaintiffs' summary judgment motion, and defendants' conduct calculated to delay and, ultimately, to foreclose any meaningful judicial review, the Court should exercise its discretion to expedite, not delay, consideration of the merits.

Defendants contend that when the parties "present separate motions," the Court may choose first to consider the one that turns on a "specific and narrow issue" rather than the one

---

(D.D.C. May 11, 2005) ("There are questions about plaintiff's service of the complaint on defendant, but that issue need not be addressed in resolving plaintiff's motion for temporary restraining order and preliminary injunction.").

8

that raises broader issues. Defs.' Mot. at 8-9 (citing *United States v. W. Elec. Co.*, 158 F.R.D. 211, 220 (D.D.C. 1994)). As an initial matter, the parties here have not presented separate motions. There is only one motion: plaintiffs' motion for summary judgment. Defendants have simply announced that they *intend* to file a motion to dismiss. When this motion will be "forthcoming" is not revealed.

Nor is there any reason to think that defendants' motion will turn on a specific or narrow issue. Defendants advise that their motion will address issues pertaining to jurisdiction and urge the Court to address these issues as threshold matters. Defendants list and summarily brief issues of standing, ripeness, and finality of agency action as "example[s]" of what they wish to raise.[6] Defs.' Mot. at 9. But defendants do not suggest that their motion will be limited to these arguments. Nor do defendants provide any reason why these arguments could not be made in opposition to plaintiffs' pending motion. Although defendants refer vaguely to unspecified trouble and expense in responding to plaintiffs' motion, they fail to provide any specific reason why there is more "trouble" involved in responding to plaintiffs' motion than in filing their own. Presumably, defendants' arguments are the same, whether put forth in opposition to plaintiffs' motion or affirmatively in their own. Given this, allowing defendants to file a separate motion at some future date, briefing and deciding that motion before defendants even brief their opposition to summary judgment, would achieve but one objective – further delay. This, of course, is precisely what defendants sought to achieve in the FinCEN proceedings, the destruction of this Andorran bank without meaningful opportunity to challenge, as plaintiffs explain at length in their summary judgment brief. This Court should not permit that strategy.

---

[6] Plaintiffs will reserve their response to these jurisdictional arguments until they are actually presented for adjudication in an appropriate motion or opposition. Suffice it to say here that plaintiffs are confident that their standing is proper and that this case is ripe for disposition.

This Court routinely considers and decides summary judgment motions and motions to dismiss at the same time. *See, e.g.*, *Gray Panthers Project Fund v. Thompson*, 273 F. Supp. 2d 32, 37-38 (D.D.C. 2002) (denying Secretary of Department of Health and Human Services' motion to dismiss for lack of subject matter jurisdiction, or, in the alternative, to stay and granting plaintiffs' motion for summary judgment in action seeking injunctive relief relating to Secretary's failure to comply with statutory obligation to disseminate information); *Banner Health v. Burwell*, Civ. A. No. 10-1638(CKK), 2015 WL 5164965, at *18 (D.D.C. Sept. 2, 2015) (simultaneously considering defendant Secretary of Department of Health and Human Services' motion to dismiss certain claims for lack of subject matter jurisdiction and cross motions for summary judgment). And none of the cases defendants rely on in their motion to stay (Defs.' Mot. at 12-13) suggests to the contrary. In fact, none of the cases on which defendants rely speak at all to the situation here, where the defendants have moved to stay a summary judgment motion in favor of a not yet filed motion to dismiss. In virtually all of the cases cited by defendants, the motion to stay a summary judgment motion was granted in favor of a motion to dismiss that was not only already on file with the court, but had been filed *before* the summary judgment motion at issue. *See Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n*, Civ. A. No. 1:11-00202 (JDB), 2011 WL 10959877, at *1 (D.D.C. Apr. 8, 2011);[7] *Angulo v. Gray*, 907 F. Supp. 2d 107, 109 (D.D.C. 2012); *Magritz v. Ozaukee Cnty.*, 894 F. Supp. 2d 34, 36-37 (D.D.C. 2012). In *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 59 (D.D.C. 2013), contrary to the suggestion in defendants' misleading parenthetical, the court did not stay briefing on summary judgment in favor of deciding a motion to dismiss. The defendant in fact filed its opposition to the summary judgment motion concurrent with its motion to stay – and thus the

---

[7] The filing date of the motion for summary judgment is reflected on the case docket at ECF 16.

defendant did not, as defendants have done here, arrogate to itself the right to grant its own stay. After that, the court stayed the whole case, not merely the summary judgment issues, pending further court action.  And in citing *Daniels v. United States*, 947 F. Supp. 2d 11, 15 (D.D.C. 2013), defendants appear to have overlooked the fact that the motion to dismiss and summary judgment motions were *both filed by the defendants* and the Court opted first to consider the motion to dismiss rather than the alternative motion for summary judgment.

By filing the instant motion for stay and granting themselves leave not to meet the deadline for their summary judgment opposition, defendants have already accomplished their strategy in part, and this probably cannot be rectified.  But going forward, the Court should order defendants to file their opposition to summary judgment, which, of course, may include any jurisdictional defenses they wish to raise, on an expedited schedule, with plaintiffs then to file their reply.  Following oral argument, the Court can decide defendants' "threshold" issues and, if in plaintiffs' favor, then immediately decide the case on its merits.  In that way, at least the protracted delay defendants so wish to achieve will be prevented and justice can be served.

### III. Defendants' Unlawful Failure to Certify the Existing Administrative Record Cannot Render Plaintiffs' Motion for Summary Judgment Premature.

In an exercise of circular reasoning, defendants argue that a stay is justified because plaintiffs' motion for summary judgment is premature, given that FinCEN has not yet adopted a final rule and thus has not completed the record.  And because, in FinCEN's view, there is no administrative record to file, there can be no challenge to FinCEN's action.  In essence, FinCEN grants its own unfiled ripeness motion, arguing that until it issues a final rule, there can be no challenge.  But that is an issue for the Court to decide not FinCEN through administrative inaction.

Defendants cite no authority for their position that an administrative record only exists after a final rule has been issued. To the contrary, it has long been held that, for the purposes of judicial review, the "full administrative record" is the record that "was before the [decisionmaker] at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 97 S. Ct. 980 (1977); *see also Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 998 (D.C. Cir. 1990) (administrative record is what was before the decisionmaker "at the time challenged action was taken"); *Coop. Servs., Inc. v. U.S. Dep't of Hous. and Urban Dev.*, 562 F.2d 1292, 1295 (D.C. Cir. 1977) (same). In this case, the actions that are being challenged are FinCEN's issuance of its Notice of Finding that BPA is a bank of "primary money laundering concern" and its proposal of a rule adopting the fifth special measure under Section 311, each of which was issued in blatant disregard of statutory requirements. The pertinent record on appeal is thus the record that was before FinCEN when it took these actions.[8]

Unless it is FinCEN's position that these actions were taken without any record whatsoever, there is presumably an administrative record that, in FinCEN's view at least, supports these actions. That record is unquestionably complete – since the actions have been taken – and FinCEN plainly can certify it. Indeed, as set forth in plaintiffs' motion for summary judgment, FinCEN was obligated under the APA to disclose all non-secret information contained in that record at the outset of its final rule-making process for the very purpose of allowing interested parties to inspect, comment on, and challenge it. FinCEN's unlawful failure to

---

[8] Of course, this argument relates only to Counts 1 and 2 of the complaint arising under the APA. As indicated in plaintiffs' motion for summary judgment, Counts 4 and 5 of the complaint arise under federal decisional law, and thus may be resolved by this Court based on the statement of material facts not in dispute that was filed with plaintiffs' motion. The Court's consideration of these Counts is not limited to the administrative record – however it may be defined.

disclose that record hardly provides grounds for staying consideration of summary judgment. It underscores the need for consideration of that motion on an urgent basis.

The cases cited by defendants do not hold otherwise. For example, *Camp v. Pitts*, 411 U.S. 138 (1973), holds only that a party challenging an administrative action is not entitled to *de novo* review in the trial court but instead must rely on the administrative record. The case also stands for the proposition that the court may obtain from the agency, either through affidavits or testimony, additional explanations of the reasons the agency made the decision that it did. Nowhere does the case suggest that an administrative record exists only in respect of a final rule. The same is true for the other cases relied on by defendants, including *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985). In that case, the Supreme Court simply held that "agencies typically compile records in the course of informal agency action." *Id*. at 744. The Court does not suggest that no record exists unless a final rule is issued.

In short, the Court should not countenance defendants' attempt to use their own unlawful failure to provide a certified administrative record as it currently exists as justification for their failure to timely respond to plaintiffs' summary judgment motion and for seeking even further delay.

## **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully submit that defendants' motion for stay should be denied and defendants ordered forthwith to file: (i) the certified administrative record of non-secret information on which FinCEN's preliminary finding and proposed sanction were based, and (ii) any opposition they may have to plaintiffs' pending summary judgment motion. Given the urgent need for relief as set forth in the summary judgment motion, plaintiffs

respectfully request a status conference at the Court's convenience so that there can be procedural clarity and clear deadlines moving forward.

                                            Respectfully submitted,

By: /s/ Eric L. Lewis
Eric L. Lewis (DC Bar #394643)
*eric.lewis@lewisbaach.com*
A. Katherine Toomey (DC Bar #426658)
*katherine.toomey@lewisbaach.com*
LEWIS BAACH PLLC
1899 Pennsylvania Avenue, NW, Suite 600
Washington, DC 20006
(202) 833-8900

Aaron T. Wolfson *(pro hac vice)*
*aaron.wolfson@lewisbaach.com*
LEWIS BAACH PLLC
405 Lexington Avenue, 62nd Floor
New York, NY 10174
(212) 826-7001

Dated:   December 4, 2015                      *Attorneys for Plaintiffs*